IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KEVIN D. GASSAWAY                                       PLAINTIFF

                 v.                 Civil No. 14-2137

CAROLYN W. COLVIN, Commissioner
Social Security Administration                              DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Kevin Gassaway, brings this action under 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**       **Procedural Background:**

Plaintiff filed his application for DIB on February 21, 2012, alleging an onset date of January 30, 2012, due to two bulging disks, a herniated disk, and one extruding disk in his lower back. Tr. 105-110, 140-141, 165, 196-197. The Commissioner denied his application initially and on reconsideration. Tr. 52-57, 62-64. At the Plaintiff's request, an Administrative Law Judge ("ALJ") held an administrative hearing on December 13, 2012. Tr. 30-51. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 44 years old and possessed a high school education. Tr. 18, 107, 166. He had past relevant work ("PRW") experience setting up farm machinery, in sales, as a manager and laborer in a tire shop, and as a paraprofessional in a mental health center. Tr. 166, 172-179, 188-195.

On October 31, 2012, the ALJ concluded that the Plaintiff's degenerative disk disease, herniated disk, and hypertension were severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 13.  He found that the Plaintiff could perform sedentary work with occasional climbing of ladders/ropes/scaffolds, balancing, kneeling, stooping, crouching, and crawling.  Tr. 13-14.  With the assistance of a vocational expert, the ALJ found the Plaintiff could perform work as a telemarketer, purchasing clerk, and customer order clerk.  Tr. 19.

The Appeals Council denied the Plaintiff's request for review on April 16, 2014.  Tr. 1-4.  Subsequently, Plaintiff filed this action.  ECF No. 1.  This matter is before the undersigned for report and recommendation.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF Nos. 12, 13.

## II.    **Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  We must affirm the ALJ's decision if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents

the findings of the ALJ, we must affirm the decision of the ALJ. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). The fact finder considers the Plaintiff's age, education, and work experience in light of his or her residual functional capacity, only if he reaches the final stage. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion:**

On appeal, the Plaintiff raises two issues:  1) The ALJ improperly concluded that he could perform the sitting requirements of sedentary work and 2) The ALJ failed to develop the record by obtaining an RFC assessment from an examining source.  After reviewing the record, we find no merit in either of the Plaintiff's claims.

**A.  RFC:**

RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).   The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,*  245 F.3d 700, 704 (8th Cir. 2001).   Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

The Plaintiff reported a long history of chronic, intermittent back pain related to bulging and extruding disks that dated back to the 1990's.  He reportedly declined surgery because his pain

improved with steroid injections. Tr. 230, 234. Thereafter, he reported occasional flares that chiropractic care controlled. Tr. 230, 234. However, in 2011, the pain became more bothersome and was no longer responsive to chiropractic care alone.

The majority of the Plaintiff's treatment occurred in 2011, before his alleged disability onset and while he was working full-time with earnings well above the substantial gainful activity level. Tr. 36-37, 121, 136, 158-160. However, we recite it here because it was considered by the ALJ and is related to his condition during the relevant time period. The Plaintiff visited the emergency room and his primary care doctor, Dr. Roxanne Marshall, in January 2011 for flank pain, a urinary tract infection, and gall stones. Tr. 221-228, 284, 288-290, 309-312, 323-324, 333-338.

On March 12, 2011, he returned to the emergency room with complaints of back pain after opening a door. Tr. 229-235. A physical exam revealed a decreased range of motion and tenderness to the lumbar spine with a positive straight leg raising, but normal muscle strength and no other abnormalities. The doctor diagnosed him with degenerative disc disease of the lumbar spine, acute exacerbation, and prescribed ice, heat, and Ibuprofen. The doctor also advised him to avoid bending, lifting, or repetitive stooping. Tr. 230.

Later that month, Dr. Roxanne Marshall treated him for severe low back pain. Tr. 283, 339. A physical examination was unremarkable, revealing normal strength and sensation. She ordered an MRI, which showed an extruded disc at the L1-2 level with effacement of the thecal sac and facet arthrosis, bulging discs at the L3-4 and L4-5 levels that contacted the thecal sac, and facet arthrosis and a bulging disc at the L5-S1 level. Tr. 285, 313, 340. Dr. Marshall refereed the Plaintiff for a neurosurgical consult.

On April 2, 2011, Dr. Scott Schlesinger conducted a neurosurgical consultation. Tr. 256-260. The Plaintiff indicated that bending and sitting aggravated his pain. An examination demonstrated a full range of motion in the lumbar spine and in the joints of the lower extremities, no tenderness to palpation of the lumbar-sacral spine or paraspinal regions, negative straight-leg testing, a normal motor exam with full function in the muscles of all extremities, no sensory abnormalities, and a normal gait. After reviewing the MRI results, Dr. Schlesinger opined that the Plaintiff's pain was in a "much lower location and d[id] not correlate with any upper lumbar radicular distribution." He recommended conservative treatment to include lumbar epidural injections ("LESI's") and post-injection therapy protocol, followed by facet injections if the LESI's were unsuccessful.

Following his first injection, the Plaintiff reported a 50% decrease in his pain. Tr. 261. Records indicate that he attended one physical therapy session on May 5, 2011, which he tolerated well. However, there are no records of any additional physical therapy sessions.

In July, Dr. Schlesinger ordered a lumbar CT myelogram, which showed "[m]ild degenerative disc disease through the lumbar spine from the L1-L2 level through the L5-S1 level without evidence of specific neurological sequelae," and postsurgical changes at the L5-S1 level consistent with a prior laminectomy. Tr. 243, 249-252, 265-267.

On July 25, 2011, Dr. Schlesinger referred Plaintiff for a consultative neurological evaluation and electrodiagnostic testing with Dr. Lon Burba. Tr. 272-278. The exam was unremarkable, showing normal strength and muscle tone; normal sensation; and, a normal gait and station. Dr. Burba diagnosed him with degenerative disc disease at the L4-5 level, prescribing Cymbalta and the same home exercises previously prescribed by Dr. Schlesinger. He also

recommended chiropractic care to break loose the dural adhesions from the Plaintiff's prior laminectomy. There are, however, no further treatment records from Dr. Burba.

This same date, the Plaintiff was seen in follow-up with Dr. Schlesinger. Tr. 262-264. Dr. Schlesinger noted the myelo-CT scan was essentially unremarkable, showing nothing of surgical significance. He also noted the electrodiagnostic testing revealed no evidence of radiculopathy, myopathy, or polyneuropathy." Tr. 262, 268. The Plaintiff's current physical exam was essentially unchanged, showing only some tenderness to palpation of the left lower back. Dr. Schlesinger recommended facet injections into the left L4-5 and L5-S1 levels, but there are no records to indicate that the Plaintiff returned for said injections. In fact, this is the last record from Dr. Schlesinger.

On October 13, 2011, Plaintiff returned to Dr. Marshall's office with complaints of severe low back pain. Tr. 282, 341. He reported that the LESIs had not helped. Tr. 282. An exam revealed full motor strength and sensation. Dr. Marshall increased his dosage of Elavil and prescribed Ultram, reminding him that it could make him drowsy. Plaintiff had gained weight, so Dr. Marshall also recommended a low fat diet and exercise by either riding a bike or swimming.

Plaintiff returned on December 6, 2011, with complaints of severe low back pain and requested a refill of Ultram. Tr. 280, 342. He also complained of high blood pressure due to the pain. Again, Dr. Marshall documented a normal physical examination with full motor strength and no sensory abnormalities. She increased his Elavil dosage and refilled his Ultram.

On April 26, 2012, he presented in the emergency room with complaints of serious back pain and an inability to walk. Tr. 314-319. The doctor diagnosed him with intractable back pain and administered Toradol, Dilaudid, and Zofran injections. He also prescribed Percocet.

7

No further treatment was obtained until the Plaintiff presented in Dr. Marshall's office on July 23, 2012, stating that he needed refills of Hydrocodone and Zanaflex for his severe back pain Tr. 343.  He indicated that was no longer insured.  Dr. Marshall noted pain on palpation of the L4-L5 area of the lumbar spine, but normal motor strength and sensation.  She assessed him with severe degenerative joint disease of the lumbar spine with bulging discs in the lumbar spine and refilled his medications, reminding him that the medications could make him drowsy.

Four months later, on November 7, 2012, Plaintiff presented in the emergency room with complaints of back pain following an injury resulting from "moving and lifting."  Tr. 344-359.  A physical examination showed tenderness from the midline to the lower back, but no neurological deficits were evident.  The doctor prescribed medications and advised the Plaintiff to follow-up with Dr. Marshall.  Discharge notes reveal that the Plaintiff ambulated without assistance.

A non-examining consultant completed the only RFC contained in the record on April 26, 2012. Tr. 294-301.  Dr. Valeria Malak reviewed the Plaintiff's medical records and concluded that he could perform sedentary work involving occasional stooping and crouching.  Dr. Clarence Ballard affirmed this assessment on June 20, 2012.  Tr. 328.

The Plaintiff contends that he is unable to perform the sitting requirements of sedentary work.  While we are cognizant of the fact that back injuries can result in sitting limitations, in this case we can find no evidence to support the Plaintiff's assertion.  The Plaintiff reported sitting limitations to his doctors on only one occasion.  He has alleged difficulty with prolonged sitting in the documents he completed in conjunction with his application for benefits, but he reported difficulty sitting on benches at sporting events and pews at church.  However, he also reported hobbies to include fishing, reading, watching television, watching sports, playing games, and stamp collecting.  Tr. 146, 202.

In the request for records forwarded to Plaintiff's doctors, the ALJ included a statement asking them to include an RFC assessment with their records. Tr. 218, 235, 255, 269, 279, 305, 325. However, none of the doctors provided a statement of limitations. *See Baldwin v. Barnhart*, 349 F.3d 549, 557 (2003) (physicians noted few abnormalities, and none of Plaintiff's independent physicians restricted or limited P's activities). Moreover, we note in October 2011, Dr. Marshall advised the Plaintiff to exercise by riding a bike or swimming. Tr. 282. Dr. Schlesinger also prescribed physical therapy and home exercises; although it appears that, the Plaintiff attended only one physical therapy session and did not perform the home exercises as prescribed. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility."). Further, it appears the Plaintiff did not undergo the facet injections as advised by Dr. Schlesinger. *Id*.

Accordingly, we find substantial evidence to support the finding that the Plaintiff could perform the range of sedentary work identified by the ALJ.

### B. Duty to Develop the Record:

In his second argument, the Plaintiff alleges that the ALJ should have obtained an RFC assessment from a treating source. Specifically, he argues that the ALJ should have either requested an RFC assessment from his treating doctor or ordered a consultative examination. We agree that the ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ is only required to

develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994). And, contrary to Plaintiff's allegation, the ALJ properly developed the record in this case.

We note that the majority of the Plaintiff's treatment occurred in 2011, prior to his alleged onset date and during a time when the Plaintiff was working full-time. *See Gowell v. Apfel*, 242 F.3d 793, 798 (8th Cir. 2001) (claimant's credibility called into question by evidence showing she worked with her impairments for years). There is no indication in the record that the Plaintiff's condition deteriorated in January 2012, when he alleges disability onset. In fact, from December 2011 until April 2012, the Plaintiff had no medical treatment whatsoever. He then sought out treatment on only three occasions after his alleged onset date. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment).

Although we do agree that an RFC assessment from a treating or examining doctor would be valuable in this case, the absence of said evidence does not warrant remand. As previously mentioned, in spite of the ALJ's request for an assessment of limitations, none of the Plaintiff's treating physicians mentioned any limitations. Thus, we find it would not be in the interest of justice to remand the matter to request information that has already been requested and refused.

As for a consultative examination, we note that both a neurologist and a neurosurgeon examined the Plaintiff and noted minimal physical findings. Although these examinations were conducted in 2011, prior to the Plaintiff's alleged onset, as previously noted, the evidence does not support a finding that the Plaintiff's condition has deteriorated in any way. Therefore, remanding the case with directions to obtain another consultative examination would also be futile.

Accordingly, we find that the record, as it stands, contains sufficient evidence upon which the ALJ could conclude that the Plaintiff was disabled. Therefore, we recommend affirmance.

**IV.     Conclusion:**

Based on the foregoing, we recommend affirming the decision of the ALJ and dismissing the Plaintiff's Complaint.

**The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 17th day of March, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE